WENCKE et al. v. VAUGHAN.

(Circuit Court of Appeals, Fifth Circuit. January 2, 1894.)

No. 164.

CHARTER PARTY—NOTICE OF READINESS FOR CARGO—WAIVER OF OBJECTIONS.
The master of a chartered vessel gave notice of readiness for cargo seven days before the time when the charterers would be entitled to cancel the contract for failure to arrive and give such notice. He failed,

however, to furnish a surveyor's certificate of readiness, as required by the charter party. The charterers made no complaint on this or any other ground, but told the master that a certain person had been selected as stevedore. They stated from time to time that they were not ready to furnish cargo, and on the expiration of the time gave notice of cancellation, on the ground of want of readiness. It appeared that there was some dunnage in the hold, which could have been removed in a short time, if complaint had been made. *Held,* that both this objection and the want of the surveyor's certificate were waived by the conduct of the charterers, and that they were liable for failure to furnish cargo.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

This was a libel by Frank Wencke and Heinrich Wencke, partners as Wencke Soehne, against G. Vaughan, individually, and as surviving partner of the firm of G. Vaughan & Co., to recover damages upon a charter party for failure to furnish cargo to the steamship Etna. The court below dismissed the libel, and libelants appeal.

E. H. Farrar, E. B. Kruttschnitt, and B. F. Jonas, for appellants. James McConnell, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

McCORMICK, Circuit Judge. This is a suit upon a charter party, brought by the owners of the steamship Etna against the charterers for damages for not furnishing cargo. The case was submitted in the district court upon the question whether the charterers are liable for damages. The charter party was executed in London, on October 11, 1888. The vessel was to proceed to New Orleans, and there receive a cargo of cotton. Lay days were not to begin before November 1, 1888. The eighth stipulation in the charter party provided:

"The master to give written notice to charterers when his vessel is ready in loading berth, with clean-swept holds, to receive cargo, with surveyor's certificate of readiness for cargo (as specified by charterers) attached, before 12 m., and the lay days to commence on the following morning."

The tenth stipulation provides:

"Should the steamer not arrive at the port of loading, and be entered at the customhouse, and be ready to receive and stow cargo before noon on the 30th November, 1888, charterers to have the option of canceling this charter party."

The vessel arrived at New Orleans November 22, 1888. The master called on the charterers that evening, told them the ship had arrived, and asked them where she was to be berthed to take in her outward cargo. The charterers could not designate a berth that evening, and the master was directed to come back to them in the morning. He did go back on the morning of the 23d, and the berth was designated. The master telephoned orders for putting the steamer in the berth designated. He waited till he learned that the ship was being moved in accordance with his orders, and a sufficient time in his judgment for the movement to be completed, and then served the notice of readiness to receive cargo. There

v.60F.no.3—29

is conflict of testimony as to the exact hour of giving this notice. There is no dispute that it was given before 12 m., and that, if the vessel was not at that instant in her berth, she was in it before 12 m. The notice bears date 22d November, but that is manifestly a clerical error, and is satisfactorily explained in the testimony of the master. The body of the notice reads:

"Sirs: I beg to inform you that the Germ. S. S. Etna, under my command, has arrived, discharged her inward cargo, and is ready to receive her outward cargo of cotton, according to charter, dated the 11th Octbr., 1888, London."

No surveyor's certificate accompanied this written notice. In reference to the giving of this notice, and what then and immediately thereafter occurred, the respondent G. Vaughan testifies:

"I got to the office of G. Vaughan & Co. about a quarter past 10 o'clock on the morning of the 23d of November, 1888. The captain was sitting there, and the first thing I did was to sign a check to get money to pay his entrance fees. When the clerk came back, I said to the captain, 'Captain, if you are ready, you can go down and enter the ship;' and he got up, and then put a note on the desk. I said, 'What is that?' And he said, 'That is my notice.' And I said, 'What notice?' And he said, 'The notice of readiness to receive cargo.' And I said: 'Captain, you are rather previous with that. Your ship is not ready for cargo.' And he said, 'How is that?' And I said: 'Your ship is not in her loading berth. Your ship is not entered at the customhouse, and she has not finished discharging cargo.' And he said: 'I asked you for a loading berth last night, and you did not give me one.' And I said: 'I cannot give you a loading berth until your cargo is discharged.' He said: 'My cargo is discharged now.' I said: 'Captain, I doubt that very much, but I will take your word for it. You can take your ship up alongside Viola at the head of Jackson street.' He then went out with my clerk to enter his ship at the customhouse, and that is all I saw of him that day."

The master called at the office of the respondents every day except Sunday from the 23d to the 30th of November. He saw the respondents, each of the partners, several times. Was told by them at one of his first interviews that Clague was selected as stevedore, and was told from time to time that they were not ready to furnish cargo. The stevedore named went aboard the ship, and took breakfast there with the officers. Clague's partner, Gilmore, also went aboard the steamer. After what occurred when the notice was given, no suggestion was made to the master by either of the respondents or by either of the stevedores or by any one else that the ship was not ready to receive cargo. After 12 m. on November 30th, the respondents gave the master this notice:

"New Orleans, Nov. 30th, 1888.
"2 P. M.

"Captain Pape, S. S. Etna—Dear Sir: Your canceling date expired at 12 m. to-day. Not having received notice of readiness to receive cargo in accordance with charter party, dated London, October 11th, 1888, we hereby notify you same is canceled.

"Yours, very truly, G. Vaughan & Co."

The district judge correctly held:

"By receiving the within notice without the certificate, and, when subsequently questioned by the master as to cargo, remaining silent about the absent certificate, the respondents must be considered to have waived that condition."

He further held that to make the notice in question effective in law the vessel must, at or near the time of the service, as matter of fact have been ready according to the terms of the charter party. He found from the proof that the vessel was not in fact ready at or near the time when the notice was given, and therefore he rendered judgment dismissing the libel. We cannot concur in his finding of fact just indicated, but our view of the question of law to which this finding of fact is applied to support the judgment is such that it is unnecessary for us to review the testimony on that point.

If the matter of the surveyor's certificate must be held to have been waived by the conduct of the respondents, it can only be so held on the ground of estoppel, for the respondents did not expressly waive it, and it is manifest that they did not intend to waive anything, but to stand on the letter of their bond. The reason for holding the certificate waived is well stated by the district judge:

"Where time is running against the party, and the notice of defect is so easily given of a document which might be easily supplied if the party receiving the notice wishes to rely on the omission, he must, in fairness, be required to signify it to the other party."

In our own view, this sound reasoning will extend the application of the rule to the want of readiness in the ship, if any existed in this case. If any did exist, there is certainly proof of none that could not have been remedied in a short time, much within the seven days the ship lay in her berth awaiting cargo. As suggested above, the proof satisfies us that the ship was in substantial readiness to receive cargo by 12 m., 23d November. By the terms of the charter party, lay days commenced on the following morning.

Giving the utmost credit and weight to the testimony of the respondents' witnesses, Clague and Gilmore, three men could have put the vessel in readiness in two days. The libelants' witnesses say that the dunnage, the presence of which is the only unreadiness suggested by the proof, could have been removed in a few hours. The law does not favor forfeitures, and it is not so bound and helpless that it must suffer such a defense as that offered by the respondents to avoid the contract on which libelants sue. The decree of the district court should have been in favor of the libelants. The attention of the district court on the trial below, and of the parties while the case was pending in that court, having been engrossed with the question as to the respondents' liability, and that court having held they were not liable, we find the condition of the case and of the proof as to the extent of the damages to be now such that we cannot satisfactorily render the decree for damages which the district court should have rendered. It is therefore

Ordered that the decree of the district court is reversed, and this cause is remanded to said court, with direction to enter a decree in favor of libelants, with a reference to a commissioner to find and report the damages.